27 C.C.P.A.(Patents)

### Application of STERN.
### Patent Appeals No. 5669.

United States Court of Customs and
Patent Appeals.
June 30, 1950.

Lloyd H. Sutton, Washington, D. C. (Gordon W. Daisley, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C., for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the Primary Examiner's rejection, as unpatentable over the cited prior art, of all the claims, numbered 1 to 7, inclusive, of appellant's application for patent relating to the preparation of nitrocellulose from wood pulp.

The appeal to us was taken as to all the claims but in his brief and at the oral hearing before us appellant requested dismissal as to claims 4 and 5, which request will be granted.

We here quote claims 1 and 7:

"1. In the preparation of nitrocellulose from felted wood pulp sheet by a process in which the sheet is reduced to small pieces and subjected to nitrating acids, followed by washing and recovery of the nitrated wood pulp, the improvement which consists in reducing the said sheet to chips of substantially greater lengths than thickness by a striking operation which includes in one operation shearing the sheet vertically with respect to its horizontal surface and splitting the sheared chip in a direction transverse to the direction of shearing, while the wood pulp sheet has an air-dry value above about 105%, in order to produce softer, more expanded chips which yield a more soluble nitrocellulose after nitration in comparison with chips formed from more moist sheets."

"7. A process for the preparation of nitrocellulose from felted wood pulp sheet which comprises drying the sheet to an air-dry value above 105%, reducing the sheet by chipping lengths having substantial length and cross section from the sheet and splitting the chipped lengths in a direction transverse to the direction of chipping to form expanded chips, drying the chips further to an actual moisture content of less than ½%, nitrating the dried expanded chips, and recovering the resulting nitrated wood pulp, said product being characterized by susbtantially complete solubility and by being improved in clarity and completeness of solution over nitrated pulp chips formed from sheet at an air-dry value less than 105%."

Two patents were cited as references, viz.: Stern, 2,028,080, Jan. 14, 1936; Richter, 2,112,115, Mar. 22, 1938.

The Stern patent so cited was issued to appellant and is shown to have been assigned to Hercules Powder Company, appellant's employer.

It is recited in the specification that the application is a continuation in part of a prior application of appellant, serial No. 356,177, filed September 10, 1940, which was a continuation in part of another prior application, serial No. 179,032, filed December 9, 1937. Both of the prior applications were made a part of the record before us. Both were rejected by the tribunals of the Patent Office and no appeals from the decisions of the board seem to

have been taken. The decisions in those cases are dwelt upon in the decisions of both the Primary Examiner and the Board of Appeals in the instant case, but the doctrine of *res judicata* was not invoked as to claims 1, 2, 3, 6, and 7.

It is said in the statement of the examiner following the appeal to the board:

"* * * The essence of the alleged invention resides in the preparation of the wood pulp sheets for nitration, the steps of nitrating themselves being the conventional nitration process for cellulose by means of nitration acids.

"In accordance with the process disclosed herein felted wood pulp sheets are reduced to small pieces, by means of a cutting or chipping device and in the manner disclosed in the Stern patent 2,028,080. In accordance with the Stern patent the resulting chips are of lengths substantially greater than the thickness of the pulp board. The chips are then nitrated by treatment with nitration acids in accordance with the usual methods of nitration.

\* \* \* \* \* \*

"The term 'air dry value' is an arbitrary standard of moisture content which is used in the paper industry, in which 'air dry' pulp has an actual content of 10% moisture. Thus an 'air dry' value of 105% would mean that 100 pounds of pulp actually contain .90 x 105 or 94.5 pounds of bone dry pulp and 5.5% actual moisture.

"In applicant's prior patent 2,028,080 the pulp board (moisture content not specified) is presented to the shearing, splitting and tearing action of the knives of the chipping machine as disclosed in Figure 1 of the patent, thus producing chips 'of substantially greater length than thickness' as defined in the claims herein. The patent disclosure states that wood pulp so prepared may be nitrated by the use of the usual nitrating mixtures used for the nitration of cotton. The Stern patent therefore discloses all that is being claimed in the present specification with the exception of the moisture limitations of the pulp board *during the chipping*." (Italics ours.)

We have italicized the phrase "during the chipping" because it is emphasized in the brief for appellant that a moisture content of not exceeding 5.5% at the time the chipping takes place, which is prior to use of the nitration steps, is critical.

In the brief for appellant before us it is said, in substance, that the wood pulp sheets are formed at the mill and conventionally shipped in rolls to the plant where the step of chipping is done, and thereafter the nitrating steps are carried out. So, it is asserted, "there are three distinctively different times at which the moisture content of the sheet is to be considered."

The times are then defined as follows:

"(1) the moisture content of the sheet at the time of delivery [from the mill where made to the plant where processed to make nitrocellulose];

"(2) the moisture content of the sheet at the time of chipping; and

"(3) the moisture content at the time of nitrating."

The brief then states, in substance, that the here claimed invention relates to the alleged critical range of moisture at the time of the chipping.

After the Richter patent had been cited as a reference, in the first rejection by the Primary Examiner, there were filed the affidavits of appellant Stern, Edwin B. Spaulding, Clark B. Kingery, and Robert M. Brooks, the three latter being research chemists employed at plants of Hercules Powder Company, who made tests relative to the subject matter of moisture content under the direction of appellant.

One purpose of the affidavits of appellant and Spaulding (who also filed affidavits for the same purpose during the prosecution of application serial No. 179,032) and that of Kingery was to overcome the date of the Richter patent. See Patent Office Rules, old Rule 75; present Rule 131, 35 U.S.C.A.Appendix.

The examiner held, and the board sustained the holding, that the Richter patent had not been overcome by the affidavits, and the contention on behalf of appellant in that regard has not been pressed before us.

The affidavits are relied upon, however, as proof of the alleged criticalness of the

moisture content of the sheets *at the time of chipping the sheet* as distinguished from the content at the time of its delivery at the plant and from the content at the time of nitrating the chipped fragments.

We have studied the affidavits carefully, and we do not agree with the holding by the tribunals of the Patent Office to the effect, as expressed by the examiner, "that the limit of 5.5% moisture at the time of chipping involves no more than a matter of degree over the use of air-dried sheets" and hence that the claims are rejectable as lacking invention over appellant's prior patent *"taken alone."*

We find nothing in the Stern patent, 2,028,080, which relates in any manner, or in any way teaches anything, respecting moisture in wood pulp. As we understand the patent, the product—wood pulp—and the method of making it are the only matters covered or sought to be covered therein. The product was to constitute, in the condition as developed, material from which, among other things, nitrocellulose might be made. No process of making nitrocellulose was included or even suggested in the patent.

Appellant's application here at issue seeks to patent a process for making nitrocellulose from the product resulting from the use of his patented process in creating what, not improperly we think, may be designated as "raw material."

It seems obvious to us that the claims here involved should not be rejected on the Stern patent standing alone.

We have not overlooked the fact that in the decisions made by the respective tribunals of the Patent Office in the instant case their decisions denying appellant's applications, serial Nos. 179,032 and 356,177, hereinbefore referred to, were cited as controlling, or at least as being very persuasive, here when taken in connection with the Stern patent. In both of those applications the matter of moisture content was a prominent element in both the specification and the claims, but we do not find where any claim in either application, which bears any pertinent relation to the claims here under consideration, was rejected on the Stern patent alone. In the decisions rejecting application serial No. 179,032 two other patents were cited as references, the Richter patent not being one of them. In the decisions rejecting application serial No. 356,177 Richter was cited along with those which had been cited in the rejection of application serial No. 179,032.

However, we do not find it necessary to elaborate our views adverse to the rejection of the claims at issue before us on the Stern patent standing alone, nor is it essential to our decision to make a definite holding upon the question of criticalness respecting the moisture content, because, even if it be critical, we are not convinced that the board erred in affirming the decision of the Primary Examiner rejecting the claims on the Stern patent in view of the disclosures of the Richter patent.

The specification of the Richter patent clearly teaches drying the sheets of wood pulp to a point where the moisture content is within the percentage range upon which appellant relies. This is not questioned by appellant, but it is argued that the references in the specification so teaching refer to the moisture content at the time of nitration rather than at the time of chipping.

It is true that Richter makes no direct reference to any specific moisture content existing at the time of chipping, but, as we understand the specification, it teaches that the sheets are dried to a moisture content within the content range of the claims here under consideration prior to being chipped and maintained at such content during the step of chipping and through the step of nitrating.

In compliance with the request on behalf of appellant, the appeal is dismissed as to claims 4 and 5.

For the reasons stated, the decision of the board affirming the Primary Examiner's rejection of claims 1, 2, 3, 6, and 7 is affirmed.

Affirmed.